# FIRST NATIONAL BANK OF MOUNTAIN VIEW v. WILSON *et al.*

No. 4896.    ·Opinion Filed November 23, 1915.

(153 Pac. 172.)

1.    JUSTICES OF THE PEACE—Jurisdiction—Agister's Lien—Enforcement.    A justice of the peace has jurisdiction to entertain an action brought to enforce an agister's lien under the statutes of this state.

2.    CHATTEL MORTGAGES—Agister's Lien—Priorities.    The lien of a valid recorded chattel mortgage will take precedence over the subsequently acquired lien of a person furnishing feed to the owners of the animals embraced in said mortgage, unless such feed was furnished to the owner with the consent of the mortgagee.

3.    SAME.    The lien of a person who furnishes feed to the owner of certain animals with the knowledge and consent of a mortgagee is superior to the lien of said mortgage, although furnished after the filing thereof.

(Syllabus by the Court.)

*Error from County Court, Kiowa County;*
*J. W. Mansell, Judge.*

Action by Jennie D. Wilson against the First National Bank of Mountain V ew and others. Judgment for plaint:ff, and the defendant named brings error. Affirmed.

*Rummons & Logan,* for plaintiff in error.

*Thos. W. Conner,* for defendant in error.

HARDY, J. Defendant in error Wilson filed her complaint in a justice court of Kiowa county seeking to enforce an agister's lien upon certain animals, alleged to be the property of one J. W. Hodges, and naming as one of the defendants there'n the plaintiff in error, First National Bank of Mountain View. All of the defendants except Hodges and the bank made default; and on November 14, 1911, trial was had in the justice court, resulting

in judgment for plaintiff and ordering the property sold to satisfy said lien. The bank appealed to the county court, where trial was had and judgment again rendered for plaintiff. Motion for new trial was filed and overruled, and the bank brings error.

Plaintiff alleged in her complaint that she had an account for feed furnished the defendant Hodges for the purpose of feeding said stock during a period of time from about April 1 to about September 1, 1911. This was admitted in the testimony at the trial in the county court, and no issue was made as to the correctness of her claim. The bank relied upon a chattel mortgage upon said stock, dated January 7, 1911, duly recorded and unsatisfied.

A preliminary objection is made by plaintiff in error to the jurisdiction of the justice court in the first instance, and of the county court on appeal, to enforce the lien claimed; it being contended that the proceeding is equitable in its nature, and that a justice of the peace is without equitable jurisdiction. There is no merit in this contention. The procedure for enforcing liens of this character is pointed out in chapter 3, art. 5, Wilson's Ann. & Rev. Stat. 1903, being chapter 3, art. 4, Rev. Laws 1910.

The question here is whether the bank, under its mortgage, has a prior lien on said stock, or whether plaintiff Wilson, under chapter 3, Sess. Laws 1901, p. 43, has a prior lien thereon. Section 2 of said act is as follows:

"Any person or persons, partnership, firm or corporation within this territory, or in any border county of the adjacent states, furnishing or providing to the owner of such domestic animals any corn, feed, forage or hay, for the sustenance of such domestic animals, shall, for the amount due for such corn, forage, feed and hay, have a lien on said animals."

Section 3 of said act is as follows:

"All liens, not to exceed in the aggregate twenty-five per cent. of the value of such animals, against any domestic animal or animals for labor, grazing, herding, or feeding, or for corn, feed, forage or hay, furnished the owner of such domestic animals as herein provided, and actually used for such purpose, shall be prior to all other liens thereon, and no recital or stipulation in any mortgage or other incumbrance on any cattle so fed shall be held to supersede or vitiate the lien here provided for."

These sections are embraced in chapter 3, art. 5, of Wilson's Rev. & Ann. Stat. 1903, and appear as sections 109 and 110 thereof.

Plaintiff contends that, under said section 3, her lien is paramount to that of defendant bank. This section of the statute was before the court in the case of *National Bank of Commerce v. Jones,* 18 Okla. 555, 91 Pac. 191, 12 L. R. A. (N. S.) 310, 11 Ann. Cas. 1041; and in construing the same Chief Justice Burford, for the court, held section 3 to be unconstitutional and void. Plaintiff says that said statute was only declared invalid so far as that particular case was concerned, because the mortgage there involved had become a valid lien almost three months before the act was adopted, and that said section, so far as rights thereafter acquired are concerned, is valid and still in force. Such, we think, is not true. The court did not seek to distinguish between the case under consideration and other cases, but in the third paragraph of the syllabus specifically held:

"An act of the Legislature which postpones an existing valid mortgage lien and makes a subsequently created lien superior to the mortgage lien is a law impairing vested property rights and impairing the obligations of a

contract, and is void for conflict with the Constitution of the United States."

The section having been held void, it is not for us to say whether the conclusion of the court in that respect was correct.

The contention was further made in that case that the lien for feeding and caring for the animal was superior to the mortgage. In denying this contention, the court called attention to the fact that the weight of authority was to the contrary. and in support of the statement of the rule by the court that the lien of a prior valid recorded chattel mortgage will take precedence over the subsequently acquired lien of a livery stable keeper or agister upon animals placed in his charge, unless such animals were delivered to the livery stable keeper or agister to be kept and cared for by him with the consent of the mortgagee, reference is made to the following cases: 19 Am. & Eng. Ency. Law (2d Ed.) 438; 2 Cyc. 319; *Sargent v. Usher,* 55 N. H. 287, 20 Am. Rep. 208; *Blackford et al. v. Ryan et al.* (Tex. Civ. App.) 61 S. W. 161; *Howes v. Newcomb,* 146 Mass. 76, 15 N. E. 123; *Everett v. Barse Live Stock Com. Co.,* 115 Mo. App. 482, 88 S. W. 165; *Cable et al. v. Duke et al.,* 132 Mo. App. 334, 111 S. W. 909; *Erickson v. Lampi,* 150 Mich. 92, 113 N. W. 778, 121 Am. St. Rep. 607; *McGhee v. Edwards,* 87 Tenn. (3 Pick.) 506, 11 S. W. 316, 3 L. R. A. 654; *Chapman v. First Nat. Bank,* 98 Ala. 528, 13 South. 764, 22 L. R. A. 78; *Sullivan v. Clifton,* 55 N. J. Law, 324, 26 Atl. 964, 20 L. R. A. 719, 39 Am. St. Rep. 652; *Hanch v. Ripley,* 127 Ind. 151, 26 N. E. 70, 11 L. R. A. 61; *Wright v. Sherman,* 3 S. D. 290, 52 N. W. 1093, 17 L. R. A. 792; *Ellison v. Tuckerman,* 24 Colo. App. 322, 134 Pac. 163; *Grubb v. Lashus,* 42 Utah, 254, 129 Pac. 1029.

Plaintiff says, however, that the defendant bank, under the facts in this case, has waived its right to claim that its mortgage is paramount to the lien of plaintiff for the feed furnished. It appears from the evidence that Hodges, the owner of the stock, had borrowed a certain sum of money from the bank, giving the bank a mortgage upon the property as security, and had thereafter been refused further credit by the bank, and that he was unable to buy feed, and requested plaintiff to furnish same; that plaintiff applied to the defendant bank for the money with which to buy said feed, stating the purpose for which she wanted said money, and the cashier of the bank stated to her that the stock had to be fed, and that it would be all right, that she, as landlord, would be perfectly safe in putting up the feed, and she thereupon borrowed the money from the bank and purchased the feed for Hodges, which was, in fact, fed to and consumed by said stock. The rule as stated in *National Bank of Commerce v. Jones, supra,* is that:

"The lien of a valid recorded chattel mortgage will take the precedence over the subsequently acquired lien of a livery stable keeper or agister upon animals placed in his charge, unless such animals were delivered to such lien-holder to be kept and cared for by him with the consent of the mortgagee."

In that case the animal upon which the lien was claimed was left in the possession of Jones without the knowledge or consent of the mortgagee. Jones was the keeper of a feed barn, and kept and fed the horse until the commencement of that action. The statement of the rule in the second paragraph of the syllabus quoted would indicate that the court was of the opinion, although the question was not decided, that, had the animal been placed

in the possession of Jones with the consent of the mortgagee, Jones would have acquired a lien thereon which he could enforce against the rights of the mortgagee. There is a respectable line of authorities to this effect, some of which announce this rule directly, while a number state it converesly, as was done in *Bank of Commerce v. Jones, supra.* See note to *Bank v. Jones,* 12 L. R. A. (N. S.) 310; 11 Ann. Cas. 1041.

Under the facts in this case we think the bank ought not to be heard to say that plaintiff Wilson is not entitled to pay for such feed, which inured to the benefit of the bank in preserving the property upon which it had its mortgage. See *Bank v. Jones, supra,* and notes thereto.

It is true that the mortgage was on file at that time, and the plaintiff knew of its execution, but the bank could waive its priority, and when by its action under the circumstances it induced her to purchase feed and loaned her the money with which to make such purchase, we think it waived the right to assert the priority of its mortgage over her lien for the feed so furnished.

The judgment of the court is, therefore, affirmed.

All the Justices concur.